Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 518 | **DATE** | 9/13/2000 |
| **CASE TITLE** | Consuela Quinn vs. The Non-Contributory National Long | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This Court denies Quinn's motion, (12-1) and grants Blue Cross' motion (7-1) and dismisses this action with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 14 2000 | 16 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 9/13/2000 date mailed notice | |
| SN | courtroom deputy's initials | FILED FOR DOCKETING 00 SEP 13 PM 3:28 Date/time received in central Clerk's Office | SN mailing deputy initials |

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONSUELA QUINN,                      )
                                     )
              Plaintiff,             )
                                     )
       v.                            )    No. 00 C 518
                                     )
THE NON-CONTRIBUTORY NATIONAL        )
LONG TERM DISABILITY PROGRAM and     )
BLUE CROSS AND BLUE SHIELD           )
ASSOCIATION,                         )
                                     )
              Defendants.            )

MEMORANDUM AND OPINION ORDER

Consuela Quinn ("Quinn") has brought this Employee Retirement Income Security Act ("ERISA") action under 29 U.S.C. §1132(a)(1)(B)("Section 1132(a)(1)(B)") in her continuing attempt to get long term disability income benefits from Blue Cross and Blue Shield Association ("Blue Cross"). Quinn has also named as an added defendant the employee welfare benefits plan from which she seeks those benefits, the Non-Contributory National Long Term Disability Program ("Program"). As the later discussion reflects, this case is a retread before this Court, having earlier climbed up the hill to our Court of Appeals and then having climbed down again.

As a result of this second go-round, both sides have again moved for summary judgment under Fed. R. Civ. P. ("Rule") 56 and have relatedly complied with this District Court's LR 56.1.[1] At

---

[1] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to



this point those motions are fully briefed and ready for decision. For the reasons stated in this memorandum opinion and order Blue Cross' motion is granted, Quinn's motion is denied and this action is dismissed with prejudice.

## Summary Judgment Standards

No case citations are really needed to support the universally established principle that Rule 56 requires the facts to be viewed from the nonmovant's perspective. So where as here cross-motions for summary judgment are filed, it becomes necessary to adopt a dual perspective--one that this Court has often described as Janus-like. In this case, though, no material facts are in dispute. Instead the question is one of law: whether Blue Cross properly exercised its duties as administrator of Quinn's benefit plan.

## Background

Most of the relevant facts are recited in this Court's earlier opinion ("Opinion I," 990 F.Supp. 557 (N.D. Ill. 1997)) and in that of the Court of Appeals ("Opinion II," 161 F.3d 472 (7th Cir. 1998)) and will therefore not be repeated at length.

---

such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to the LR 56.1(a)(3) statement filed jointly by Blue Cross and the Program as "BC St. ¶--" and to Quinn's LR 56.1(b)(3)(B) statement of additional facts as "Q. St. ¶--." Responses to those statements are cited "BC Resp. ¶--" and "Q. Resp. ¶--." Those same "BC" and "Q." abbreviations are used as to the parties' briefs and exhibits. References to the parties' joint appendix appear as "Jt.App."

2

In a nutshell, however, Quinn worked for Health Care Service Corporation ("Health Care"), a Blue Cross licensee that participates in the Program. While on short-term disability in 1994 after a hysterectomy, Quinn was diagnosed with interstitial cystitis, a non-bacterial inflammation of the urinary bladder that can cause pain and frequent urination. Citing that condition, in February 1995 Quinn applied for long-term disability benefits under the Program. Conflicting medical testimony was presented, with Drs. E. Richard Blonsky and Anthony Schaeffer opining that Quinn was not disabled and Drs. Dennis Pessis and Donald Hoard offering the opposite view. Based on the former opinions, to which Blue Cross gave greater weight, it denied Quinn's benefits claim. That determination was then upheld on administrative appeal.[2]

Quinn next filed an ERISA action pursuant to Section 1132(a)(1)(B). On the ensuing cross-motions for summary judgment, this Court determined that while it "cannot be labeled an abuse of discretion for Blue Cross to have decided to accept the Schaeffer-Blonsky view rather than the opposing Pessis-Hoard opinion" (Opinion I at 561), Blue Cross did abuse its discretion by its "failure to investigate properly whether Quinn was capable of finding a comparable job at a similar salary..." (id. at 563). That decision was initially coupled with an order remanding the

---

[2] Quinn's original benefits ended on August 31, 1995.

matter to Blue Cross for further consideration, but when Quinn requested reconsideration under Rule 59(e) this Court determined that Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 697 (7th Cir. 1992) called instead for granting the retroactive reinstatement of Quinn's benefits.[3]

On appeal, the Court of Appeals agreed with this Court that Blue Cross' vocational skills determination had been made arbitrarily (Opinion II at 476):

> We agree that [Blue Cross] was under no obligation to undergo a full-blown vocational evaluation of Quinn's job, but [it] was under a duty to make a reasonable inquiry into the types of skills Quinn possesses and whether those skills may be used at another job that can pay her the same salary range as her job with [Health Care].

But the Court of Appeals held that Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996) rather than Halpin controlled the particular facts of the case.[4] So the Court of Appeals sided with this Court's original ruling[5] so that "the case should be remanded to

---

[3] Because Quinn was then a prevailing party, this Court also awarded her attorney's fees (Opinion I at 564-66).

[4] In that respect, Opinion II at 478 said that on the then-developed record Blue Cross' "decision to deny Quinn's claim was arbitrary and capricious, but not necessarily wrong" because it "simply did not make an adequate finding when [it] determined that Quinn was able to obtain another comparable occupation." As the Court of Appeals noted, this Court shared the latter view even though it had ultimately reached a different conclusion as to the need for further proceedings.

[5] As Opinion II at 478 stated:

> Therefore, we find that the district court's original disposition in this case was the proper one, and Quinn is

4

the Program Secretary to make a more adequate assessment of
whether Quinn is disabled as defined by the Program, specifically
whether her vocational skills enable her to obtain another job
with a comparable salary" (Opinion II at 479).[6]

On remand Blue Cross placed Quinn's claim at the point when
claims are first presented to the Claims Appeals Committee
("Appeals Committee")(BC St. ¶42). In response Quinn "notified
Blue Cross that it [sic] would not consider the remand
proceedings to be in compliance with the [Court of Appeals']
ruling unless the review was performed independently" (Q. Mem. 2;
see also Jt.App. Tab E, BC1001). Nevertheless Quinn submitted a
substantial number of items in support of her appeal (BC St.
¶45):

> (1) a report of diagnostic vocational assessment performed
> on Quinn on March 29, 1999 by Cheryl R. Hoiseth ["Hoiseth"];
> (2) Hoiseth's *curriculum vitae*; (3) an "Updated Report of
> Donald E. Hoard, M.D." dated March 16, 1999; (4) notes of
> bladder instillations performed on 9/29/97, 11/24/97,
> 3/23/98, 5/18/98, 7/20/98, 9/28/98, 1/11/99, and 3/22/99;
> (5) a sworn statement from Dr. Donald E. Hoard dated March
> 21, 1997; and (6) a portion of the Social Security
> Administration's determination granting Quinn disability
> benefits.

Much of that material was discounted by Blue Cross because it
considered that evidence relating to Quinn's health after

---

    not entitled to retroactive benefits unless and until she is
    determined disabled under the terms of the Program.

    [6] Opinion II at 478-79 also reversed the award of
attorney's fees but did allow Quinn taxable costs because she was
"a prevailing party in some sense of the term...."

5

August 31, 1995 (the date her original benefits had ended) was irrelevant to the issue whether Blue Cross' 1995 denial of Quinn's long-term disability benefits was wrong.[7]

As for Hoiseth's diagnostic vocational assessment, she is a specialist in vocational counseling and a recognized vocational expert, but not a physician (Q. St. ¶1). Her work in this instance encompassed an interview with Quinn at Quinn's home, an incomplete vocational test[8] and a review of the medical documentation (id. ¶2). She concluded that Quinn "is not a candidate for employment," basing that opinion on (id. ¶6):

> 1) the opinions of treating doctors, 2) the instability of Quinn's medical condition and the likelihood of absences due to treatment...[and] 3) frequent interruptions during the evaluation and the fatigue caused by the evaluation.

Hoiseth also stated that her 1999 conclusion was applicable to August 1995 as well (id. ¶7).[9]

---

[7] On behalf of Blue Cross, Dr. Blonsky reviewed Quinn's submissions and concluded that most of the medical documentation was irrelevant because it related to Quinn's condition after August 1995 (BC St. ¶61). Blue Cross also inquired of Dr. Schaeffer whether he would have imposed any work restrictions on Quinn based on his August 1995 evaluation (id. ¶62). Dr Schaeffer had only one restriction: "because the patient had a history of frequent urination, she should have access to a restroom" (id. ¶63).

[8] While Quinn could not complete the vocational test, the portions that she did finish produced scores in the "Below Average" to "Very Low" range (BC Jt.App. Tab E, BC0943).

[9] BC Resp. ¶2 contends that portions of Hoiseth's report are both (1) inadmissible because it offers medical opinions from someone with no medical training and (2) unreliable because most of her "opinions were based upon her observations of Quinn's

6

For its part, Blue Cross also hired a vocational consultant, National Healthcare Resources ("National"), to conduct a vocational study (BC St. ¶64).[10] National was provided with information about Quinn's experience, her work activities with Health Care[11] and Dr. Schaeffer's opinion that Quinn needed unrestricted access to a bathroom (id. ¶¶58-59, 64).[12] National compared Chicago Tribune advertisements from August 1995 with Quinn's qualifications and salary requirements and then communicated with matching employers to determine if Quinn would have had such unrestricted access to a nearby restroom (id. ¶¶65-67). Based on that analysis, National concluded that Quinn could have, in August 1995, found a job paying a comparable salary and

---

behavior, in Quinn's home, during a vocational evaluation requested by Quinn for the purpose of supporting her claim for disability benefits." While at least part of Blue Cross' argument may well have some force, it need not be resolved here in light of the discussion that follows, which also negates the need for this Court to opine explicitly on other objections that Blue Cross has voiced as to Quinn's statement of facts.

[10] National "is a vocational consulting organization that specializes in transferrable skills analyses, labor market surveys, job analysis, vocational testing, and job placement" (BC St. ¶65).

[11] In accordance with the holding in Opinion II at 476 that Blue Cross had earlier failed to research Quinn's job duties and training properly, it obtained information from Health Care and other sources about Quinn's job duties, training and work experience (BC St. ¶¶58-60).

[12] Dr. Schaeffer's opinion in that regard was based on Blue Cross' request to "clarify his August 1995 evaluation of Quinn....[and] to state whether, as of August 31, 1995, he would have imposed any work restrictions upon Quinn" (BC Mem. 7).

7

with the appropriate medical restrictions (Jt.App. Tab F, BC1314-15 ).

As a result, the Appeals Committee again denied Quinn's claim for long-term disability benefits.[13] Quinn's administrative appeal to the Assistant Secretary of the Benefits Committee (which is the "plan administrator" for ERISA purposes) was also denied (BC St. ¶¶75-82). Having once again exhausted her administrative remedies, Quinn has returned to this Court.

Standard of Review

Q. Mem. 3 seeks de novo review, arguing that Herzberger v. Standard Ins. Co., 205 F.3d 327 (7th Cir. 2000) negates Quinn's earlier stipulation and the Court of Appeals' holding that Blue Cross' decision is subject to deferential review.[14] Quinn is wrong. Herzberger, id. at 329 sought to answer this question: (id. at 329):

> The issue is whether language in plan documents to the effect that benefits shall be paid when the plan

---

[13] Hoiseth's vocational assessment was viewed by the Appeals Committee as "primarily based upon her own evaluation of the medical evidence [and thus] unpersuasive, both because the Courts had previously upheld the Association's medical determination and because Hoiseth--a vocational rehabilitation consultant--lacked medical qualifications" (BC St. ¶74).

[14] There is a recognized exception to normal "law of the case" principles where there has been a supervening change in the controlling law (see, e.g., Best v. Shell Oil Co., 107 F.3d 544, 546 (7th Cir. 1997) and cases cited there). But in light of the ensuing discussion in the text, this opinion need not decide whether that exception applies here.

8

administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them confers upon the administrator a power of discretionary judgment, so that a court can set it aside only if it was "arbitrary and capricious," that is, unreasonable, and not merely incorrect....

In doing so, Herzberger, id. at 330 sought "to clarify" the law and "to state a general rule." But while the opinion did set out "safe harbor" language to ensure deferential review, the stated "general rule" did not mandate the use of that language, instead finding it sufficient for "the plan [to] contain language that, while not so clear as our 'safe harbor' proposal, indicates with the requisite if minimum clarity that a discretionary determination is envisaged" (id. at 331).

Here, Program § 1(p)(emphasis added) states that a person is "disabled" when he is:

> wholly prevented, by reason of mental or physical disability, from engaging in any occupation comparable to that in which he was engaged for the Employer, at the time his disability occurred. The determination as to whether a Participant is "Disabled" shall be based on medical evidence <u>satisfactory to the Committee in its sole discretion</u>.

That unambiguous vesting of discretion requires the rejection of the Q. Mem. 5 contention that the language is "uncertain and ambiguous." Rather than "minimum clarity," its clarity is more than abundant.[15]

---

[15] Quinn's counsel has recently tendered for this Court's consideration the recent discussion and application of Herzberger by Honorable William Lee in Perugini-Christen v. Homestead Mortgage Co., No. 1:00 CV 57, 2000 U.S. Dist. LEXIS 12736 (N.D. Ind. Aug. 30), which rejected a plan administrator's summary

9

Before Herzberger, Opinion II has held at 474:

> Furthermore, the Program gives full discretion to [a] Committee to construe the Program and its terms and to determine all questions that arise under it.

That has been left untouched by Herzberger -- the "sole discretion" vested in the Committee plainly commands giving its determination deferential review (see Herzberger, 205 F.3d at 332).[16]

Nor, as Q. R. Mem. 3 would have it, does Blue Cross' "bad faith evaluation...result in forfeiture of deference" as discussed in Friedrich v. Intel Corp., 181 F.3d 1105 (9th Cir. 1999). Friedrich, id. at 1110 upheld "the district court's determination that [the] claims administrator...administered [plaintiff's] claim as an adversary 'bent on denying his claim' and 'oblivious to her fiduciary obligations as administrator of the...Plan" and "that [defendant] failed to provide a 'full and fair' appeals procedure as required by ERISA." But that description simply does not fit this case.

To be sure, this Court's anticipation when the case was sent back by the Court of Appeals was that Blue Cross' review the

---

judgment motion. But nothing said there alters the conclusion that the plan at issue here has indeed "reserve[d] a broad, unchanneled discretion to deny claims" (Herzberger, 20 F.3d at 333) -- "sole discretion" is, after all, "*sole* discretion."

[16] Or put another way, that language plainly "entitle[s] the insurer to exercise a discretionary judgment in determining whether to pay an insured's claim" (Herzberger, 205 F.3d at 332).

second time around could very likely reach the same conclusion as before, so that the current outcome did not come as a surprise. After all, nothing that this Court said in Opinion I or that the Court of Appeals said in Opinion II required Blue Cross to reverse its original evaluation of the competing medical opinions. And as for the rest of Blue Cross' post-remand consideration, the discussion in the next section of this opinion confirms that nothing in the record suggests anything other than a good faith effort on its part to arrive at a fair result. (id.).[17]

Where as here such broad discretion is reposed in a plan administrator, judicial intervention is appropriate only where the decision is arbitrary and capricious (Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Carr v. Gates Health Care Plan, 195 F.3d 292, 294 (7th Cir. 1999)). And our Court of Appeals has regularly phrased that demanding standard in terms of the administrator's decision having to be "downright

---

[17] That effort is consistent with this Court's earlier observation as to Blue Cross' role in Opinion I at 560:

> Even though Blue Cross sponsors and administers the Program via its internal committees, it neither funds nor otherwise insures the Program. Instead, participating employers such as Health Care contribute to a trust that funds the Program's administrative expenses and benefit payments. Accordingly Blue Cross does not itself stand at financial risk due to the payment of benefits to Quinn, so it has no problematic conflict of interest (an issue already resolved in Bali v. Blue Cross and Blue Shield Ass'n, 873 F.2d 1043, 1047 n.5 (7th Cir. 1989)...).

11

unreasonable" (Carr, 195 F.3d at 294) or "completely unreasonable" (Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1021 (7th Cir. 1998)). This opinion turns, then, to that inquiry.

### Evaluation of Blue Cross' Determination

It is not of course this Court's function to reevaluate the medical evidence, either that presented in the first instance or that collected since. Instead, as already indicated, this Court's role is to ensure that Blue Cross made a "reasonable inquiry" in conducting its vocational evaluation and that its determination was not arbitrary and capricious. In that respect, Blue Cross is correct in looking only at evidence that bears on Quinn's condition in 1995. While post-1995 medical examinations might shed light on Quinn's condition back then, any ailments not connected to Quinn's condition in August 1995 are simply not relevant to the issue of her disability or nondisability in 1995.

As for Quinn's primary contentions on this appeal, Q. Mem. 6 first argues that Blue Cross' adverse determination on remand was in bad faith because:

> The record on remand shows that defendant treated the Court of Appeals decision as a roadmap to an "appeal proof" denial of benefits rather than a directive to conduct a fair and unbiased review of Quinn's claim.

But this opinion has already explained the unfairness of such a criticism, which appears just as result-oriented as it accuses Blue Cross of being. Nothing presented by Quinn suggests that

12

the Opinion II "roadmap" was reconfigured by Blue Cross to produce an arbitrary result. Instead Blue Cross' inquiry faithfully followed the mandate of the Court of Appeals, which did not require "a full-blown vocational evaluation" but only a "reasonable" one (Opinion II at 476). And it can hardly be said that following the directive of our Court of Appeals is "arbitrary and capricious."

Q.Mem. 6 also contends that Blue Cross erred because it "refused Quinn's request for an independent review even though the language from both this court and the court of appeals was extremely critical of defendant's conduct."[18] But in voicing that criticism as to an aspect of Blue Cross' original decision, neither this Court nor the Court of Appeals suggested that an independent review was necessary. To the contrary, this case was remanded by the Court of Appeals for "the Program Secretary to make a more adequate assessment of...whether [Quinn's] vocational skills enable her to obtain another job with a comparable salary" (Opinion II at 479). In short, the earlier rulings did nothing to remove the discretion allowed Blue Cross under the Program so long as that discretion was not abused.

---

[18] More colorfully, Q. Mem. 7 says:

> By sending the case back to Blue Cross without any assurance of an objective, independent review, the "fox", which both this court and the Seventh Circuit agreed was guilty of arbitrary and capricious behavior, was placed back in charge of the "chicken coop".

13

Quinn's other arguments that Blue Cross' discretion was abused induce a sense of deja vu. Q. Mem. 7-9 urges that Blue Cross should have considered the opinions of Drs. Hoard and Pessis and given weight to the ruling of the Social Security Administration ("SSA") in making its assessment. But those are the same arguments originally rejected by this Court and then affirmed on appeal. While Quinn seeks to place those arguments in the context of the remand, the analysis is the same.

For example, Q.R. Mem. 5 says that National was not given factors cited by Drs. Pessis and Hoard such as "the effects of pain, sleeplessness, and periodic absences due to treatments...." But just as it was not an abuse of discretion for Blue Cross to have discounted those opinions, so it was not an abuse for Blue Cross not to have passed that information on to National. It is after all the Committee that has discretion to sort through and choose between contradicting medical opinions, so that Blue Cross was entitled to present National with the medical information that Blue Cross in its discretion considered representative of Quinn's condition (including work restrictions). To provide conflicting medical information to outside persons with no relevant medical training would obviously tend to move that discretion away from the Committee.[19]

---

[19] In other words, the Committee properly considered all of the medical evidence, but then rejected what it found less persuasive. That is simply the essence of decision making. This case is not at all like Crocco v. Xerox Corp., 956 F.Supp. 129,

14

That same analysis undercuts Blue Cross' failure to give Hoiseth's vocational evaluation to National. As Q. Mem. 2 acknowledges:

> Hoiseth's opinion was well-supported from several sources, including two urologists, Drs. Donald Hoard and Dennis Pessis; as well as the Social Security finding....

But as Opinion I at 562 has already said, it was within the Committee's reasonable discretion to discount conflicting medical testimony and the SSA's conclusion "in view of the opposite opinion of Drs. Schaeffer and Blonsky." Blue Cross was not required to submit to National a report based primarily on information that the Committee had rejected in its discretion.

## Conclusion

Quinn's motion is sunk by the "arbitrary and capricious" standard. Blue Cross's inquiry and conclusion as to the vocational determination were not "completely unreasonable," so that the discretion granted to it under the Program was not

---

135 (D.Conn. 1997) cited at Q. Mem. 7, in which the plan fiduciary conducting an ERISA review "failed to examine [claimant's] medical record, even though it was available to her." There the court said, id. at 139 (quotation marks and citation omitted):

> It would be impossible to construe [the plan fiduciary's] actions, standing alone, as a consideration of any and all pertinent information reasonably available or an examination of the evidence presented by both parties.

By contrast, here all of the information was both "considered" and "examined."

abused. And Quinn has not put forth any persuasive evidence to support a finding of bad faith on the part of Blue Cross. This Court therefore denies Quinn's motion, grants Blue Cross' motion and dismisses this action with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 13, 2000